**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **No. 1:25-cr-00048-LM** |
| | ) | |
| **BRIAN HARGRAVES,** | ) | |

# UNITED STATES' SENTENCING MEMORANDUM

The defendant communicated with at least five minors in a sexual manner over the course of months and years. He portrayed himself as a teenage boy in these communications in order to ingratiate himself with these victims. His communications with these victims were extensive, speaking frequently over the phone and video calling, and exchanging thousands of messages. Countless of these messages were sexually explicit in nature. Multiple minors disclosed that they shared sexually explicit images and videos of themselves with the defendant. The defendant's phone and his Snapchat account revealed several images and videos of one of the minors that constitute child sexually abuse material ("CSAM"). The minor victim disclosed that she sent explicit materials of herself to the defendant after he persuaded her to do so, saying that he was her "boyfriend." The defendant also obstructed justice by reaching out to the minor victim *after* his phone had been seized by law enforcement and urged her not to testify or provide a statement in the matter. The United States recommends a guideline sentence of 180 months imprisonment, followed by 5 years of supervised release.

## The Offense

Beginning in 2022, the defendant, a resident of Albany, NH, began communicating online with a 15-year-old female resident of New Jersey ("MV1") on Snapchat and fostered an online romantic relationship with her. They initially met on the social media application "Purp," and the defendant told MV1 that he was a teenage boy living in her home state and later in New

Hampshire. The defendant and MV1 communicated frequently for several months and MV1 told her parents that she was in a romantic online relationship. PSR ¶ 7.

After being confronted by her parents about her relationship with the defendant, MV1 deleted all images, videos and chats with the defendant from her phone. PSR ¶ 9. In 2023, MV1's parents reported the defendant's email and Snapchat accounts to law enforcement. During a subsequent forensic interview, MV1 disclosed that between July 2022 and February 2023, she sent numerous explicit photographs and videos of herself to the defendant. *Id.* MV1 estimated that she sent between 20 and 100 pictures and videos and that the defendant knew her true age, home address, and school. The defendant continued to contact MV1 into early 2025. *Id.*

On April 29, 2025, law enforcement executed a search warrant on the defendant's person and seized and searched a cell phone belonging to him. PSR ¶ 10. A search of the phone revealed communications between the defendant and several minor females.

1. **<u>Communications with MV3</u>**

The defendant's phone contained images and videos depicting CSAM, including 11 videos and 9 photographs involving another minor (identified as "MV3") engaged in sexually explicit conduct. Per Snapchat records, each of the CSAM videos were sent on October 14, 2024, and were approximately 8 seconds in length (likely due to the Snapchat settings on length of video). These videos are described in the PSR. Notably, in one of the CSAM videos, MV3 can be heard saying the name "Brian."[1] *Id.*

The images and videos were located in the deleted folder of the defendant's phone. Based on the metadata associated with the materials, law enforcement determined that they were sent to

[1] While the defendant misrepresented himself as a teenage boy and used false pictures of himself in his conversations and relationships with the minors, he consistently provided his real name: Brian Hargraves.

the defendant via Snapchat. Law enforcement was able to identify MV3 and confirmed that she was a minor. PSR ¶ 11.

A subsequent search warrant for the contents of the defendant's Snapchat account revealed the same CSAM videos found on his phone and provided the dates when those videos were originally sent by MV3 to the defendant. PSR ¶ 12. Law enforcement also recovered approximately 4,450 messages exchanged between MV3 and the defendant over Snapchat between December 1, 2023, and April 1, 2025. Based on these messages, the defendant knew that MV3 was a minor. MV3 sent numerous videos of herself narrating aspects of her daily life to the defendant. *Id.* Many of the Snapchat images and videos were set to disappear after viewing and so were not recovered by law enforcement. Some of the Snapchat chat messages were sexually explicit, and throughout the thousands of messages between them, the defendant referred to MV3 in terms to include: "my little puppy dog," "beautiful love," and "baby." He also told MV3 that he loved her. *Id.*

**2. <u>Interview of MV3</u>**

After being identified by law enforcement, MV3 participated in a recorded forensic interview. PSR ¶ 13. During that interview, MV3 disclosed that she had communicated with the defendant for months, and she described him as her "world." She stated that they initially met on the "BeFriend" application and then moved their communications to Snapchat. *Id.* MV3 stated that the defendant first presented himself as a teenage boy living in the same state as her and that he used a profile photograph of someone closer to her age. She said that they communicated by chat and audio messages and sometimes by video calls. *Id.* She reported that during the audio and video calls, the defendant "persuaded" her to send him explicit photographs and videos of herself. She stated that he "sometimes asked for stuff when we were on a call." *Id.* She reported that she was not comfortable sending him pictures of her body and told the defendant as much,

and that the defendant responded that she should send them because he was her boyfriend. She stated that when he asked if he "could see something," she "would do it" by sending him a variety of sexually explicit images including those of her nude vagina. *Id.* She believed that the defendant did not save the videos and pictures she sent to him, as they were set to automatically disappear on Snapchat. MV3 was shown some of the CSAM videos found on the defendant's phone and confirmed that she was the subject depicted in them. *Id.*

**3. <u>Communications with Other Minors</u>**

The defendant's Snapchat account also revealed numerous messages between the defendant and another minor ("MV2"). MV2 was a 15-year-old. Many of the communications were romantic in nature. PSR ¶ 14. In a forensic interview, MV2 disclosed that during her frequent audio and video calls with the defendant, they had sexually explicit conversations, during which the defendant could be heard masturbating. PSR ¶ 15. MV2 sent numerous images to the defendant but did not confirm that any of those materials were CSAM.

Law enforcement identified two other minors who had substantial communications with the defendant ("MV4" and "MV5"). MV4 exchanged extensive messages with the defendant on Snapchat. PSR ¶ 17. MV4 disclosed during a forensic interview that she had sent explicit materials of herself to the defendant at his request. *Id.* MV4 stated that she was about 15 or 16 years old when she began communicating with the defendant, who told her that he was either 16 or 17 years old. *Id.* She stated that she later believed him to be around 21 years old. She reported that during their audio calls and video calls, they frequently had sexually explicit conversations, during which the defendant could be heard masturbating. MV4 disclosed that she deleted all of the explicit videos and pictures of herself she had sent the defendant from her phone. A fifth minor, MV5, disclosed in a forensic interview that she and the defendant engaged in sexually

explicit communication over a period of months, but that she did not send him any explicit images. *Id.*

**4. Obstruction and Witness Tampering**

On May 15, 2025, approximately two weeks after the execution of the search warrants and several days after MV3's forensic interview, the defendant used a newly obtained phone and contacted MV3 via the Facebook Messenger application. PSR ¶ 16. On that date, MV3 wrote to the defendant, "I think I am going to make a statement," to which the defendant replied, "You don't have to do a statement," and "Please don't." MV3 responded, "There (sic) going to have me speak in court though." The defendant replied, "I don't want you to do that." *Id.*

Meanwhile, after identifying MV2, law enforcement spoke to MV2 and her mother. PSR ¶ 14. MV2 disclosed that on April 30, 2025, the day after the execution of search warrants on the defendant's residence, vehicle, and devices, the defendant used a newly obtained phone to contact MV2 and asked her to delete her Snapchat account and all images of him—and that she complied with his request. *Id.* MV2 reported that on May 11, 2025, the defendant contacted her again through iMessage and asked her to "delete everything on TikTok referring to [him]," to which she replied, "okay." *Id.*

**The Guidelines**

The PSR properly calculates the defendant's guideline range of imprisonment to be 168-210 months imprisonment. As explained below, the cross reference at §2G2.2(c)(1) applies to this offense which results in a base offense level of 32. USSG §§2G2.1(a) and 2G2.2(c)(1). The base offense level is increased two levels because the offense involved the commission of sexual

contact. Here, at least one of the CSAM images sent by MV3 depicted her touching her genitalia. USSG §2G2.1(b)(2)(A).

The base offense level is further increased two levels because the defendant knowingly misrepresented his identity and used an interactive computer service to persuade, induce or entice a minor to engage in sexually explicit conduct. Here, the defendant used Snapchat and other applications to misrepresent himself to minors as a teenage boy in order to induce minors, specifically MV3, to engage in sexually explicit conduct and send him videos and images of that conduct. USSG §2G2.1(b)(6)(A).

Additionally, the defendant attempted to obstruct or impede the administration of justice by tampering with witnesses and asking them to destroy evidence. This results in an additional two-level enhancement. USSG §3C1.1 and Application Note 8.

Three points are reduced for acceptance of responsibility. The total offense level was correctly calculated to be 35. PSR ¶ 34.

## **The Defendant's History**

The defendant is 55 years old. He previously resided in Albany, New Hampshire, with his wife and two adult children. He has a relatively limited criminal history and is a CHC I. At the time of this memorandum, he has a pending charge for violating a protection order that his wife obtained following the execution of the search warrants in this case.

## **The Production Cross Reference at 2G2.2(c)(1) Applies to this Offense**

As set forth in the PSR and PSR addendum, the production cross-reference applies to this case where the defendant caus[ed]… a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct." USSG §2G2.2(c)(1). This cross reference applies for several reasons.

First, MV3 disclosed in her forensic interview that she was reluctant to send CSAM to the defendant, but that he persuaded her to do so. As noted in the PSR addendum, MV3 stated that she sent the defendant a variety of nudes, including images depicting her vagina, in response to him asking if he "could see something." A binding term of the plea agreement is relevant here. The agreement stipulates that the government may rely on the video recording of MV3's Child Advocacy Center interview with law enforcement in lieu of testimony at the sentencing hearing to establish the application of this cross reference. Relevant contents of that interview are described in the PSR, PSR addendum, and in this memorandum. The United States also is providing a copy of that recorded interview to the Court as Exhibit A (conventionally filed) to this memorandum. The United States directs the Court to timestamps 57:10-101:45, in the interest of efficiency. These are the most pertinent portions of the interview with respect to the application of the cross reference. The United States will also have the recording available at the sentencing hearing if needed. While the defendant may have been careful not to specifically ask for CSAM in a chat message, MV3's interview disclosure establishes that he did ask her for such materials over video and audio calls.

Second, on October 14, 2024, the same day MV3 sent the recovered CSAM videos to the defendant, the defendant sent messages to MV3 saying: "I bet you are so warm" and "And so soft." These indicate that the defendant was encouraging and persuading MV3 to send the CSAM images and videos. These messages corroborate MV3's statement that the defendant persuaded her to send him sexually explicit materials of herself.

Third, while only CSAM images and videos of MV3 were recovered, at least three other minors indicated that they had sent numerous explicit images and videos to the defendant. MV4 disclosed that she did so at the defendant's request. MV1 could not recall if the defendant specifically requested CSAM, but that he was complimentary when she shared it with him.

Finally, MV2 sent numerous images to the defendant, which were recovered, and while explicit, they did not appear to meet the statutory definition of CSAM. The fact that at least three other minors disclosed that they were sending images and videos to the defendant, including at his request, further corroborates MV3's statement that the defendant persuaded her to create and send him CSAM.

Fourth, as noted in the PSR and above, in at least one of the CSAM videos, MV3 can be heard saying the name "Brian." This further supports the proposition that these materials were created for the defendant and at his request.

Finally, the context of the conversations supports application of the cross reference. The defendant created a false persona and used it to ingratiate himself deeply with multiple minors, including MV3. He exchanged thousands of messages, many of which were romantic and/or sexual in nature. Several minors also disclosed frequent video and audio calls with the defendant. Through this extensive grooming, the defendant positioned himself to persuade and cause minors, including MV3, to create and send him CSAM of themselves.

**A Sentence of 180 Months Imprisonment is Appropriate**

The defendant participated in extensive abuse and deception of multiple minors. The harm he caused to vulnerable teenage victims is difficult to quantify. A serious sentence is warranted. The guidelines in this case merely account for the harm caused to one victim, MV3, whose images and videos were able to be recovered from the defendant's phone and Snapchat account. As serious as his conduct was with respect to MV3, the guidelines still do not account for the extensive harm caused to at least four other minors. The investigation revealed that likely numerous sensitive and exploitative images and videos were deleted either by the minor victims or were set to disappear on Snapchat and were never recovered. The defendant misrepresented himself for several years as a teenage boy with multiple minors and engaged in sexually explicit

messaging, sexually explicit phone and video calls, and thousands of messages in total with at least five minors.

Once his conduct was discovered by law enforcement, the defendant then engaged in obstruction, reaching out to two of the minors and asking them to either delete evidence against him or to not make a statement regarding the investigation. His conduct was egregious. A sentence within the guidelines but above the bottom of the applicable range of 168-210 months is appropriate.

**CONCLUSION**

For the reasons set forth above, the United States recommends that the Court impose a sentence 180 months imprisonment, and 5 years of supervised release.

Respectfully submitted,

ERIN CREEGAN
United States Attorney

Date: September 13, 2026

By:/s/ Matthew Vicinanzo
Matthew Vicinanzo
Assistant U.S. Attorney
NH Bar No: 277123
53 Pleasant Street, 4th Floor
Concord, NH 03301
matt.vicinanzo@usdoj.gov
(603) 225-1552