**THE UNITED STATES OF AMERICA**

United States District Court - District of NH

| | |
|---|---|
| The United States<br>v<br>Brian Hargraves | 1:25-cr-48-LM-AJ |

**DEFENDANT'S SENTENCING MEMORANDUM**

The defendant, through counsel, Theodore Lothstein, Esq., respectfully presents his Sentencing Memorandum. He asks for a downward variance to 87 months based on extensive mitigation including the impact of childhood trauma, substance addiction, and debilitating physical and mental health challenges. These struggles contributed to his transformation from a 50 year old man who had steadfastly maintained stable and gainful employment, remained free of criminal convictions, and raised two daughters with his wife of decades well into their 20s, to the sordid and pathetic last several years of his life described in the offense conduct. Those struggles, further, will make it more difficult for him to serve time than the typical inmate, increasing the punitive aspect of any prison sentence chosen by this Court.

In support, it is stated:

1. The United States has charged Mr. Brian Hargraves by Superseding Information with violations of 18 U.S.C. §2252(a)(5)(B) and 18 U.S.C. § 1512(b)(2)(A), after he filed a Plea Agreement manifesting his intent to plead guilty to those charges.
2. Mr. Hargraves accepted responsibility for his offenses and changed his plea to guilty on May 12, 2026. Binding provisions in the Plea

Agreement establish a sentencing floor of 84 months and a cap of 180 months.

3. Sentencing is scheduled for September 21, 2026.

I. PSIR Guideline Calculations and Defense Objection

4. Mr. Hargraves has one dispute with the PSR, the application of the cross-reference in USSG ¶2G2.2(c)(1). The impact of this cross-reference raises the low end of the GSR from 87 months to 168 months.

5. Mr. Hargraves agrees with parts of the analysis of the guideline calculations in the final PSIR. He agrees that the guideline for a violation of 18 U.S.C. §2252A(a)(5)(B) *where a cross-reference does not apply* is USSG 2G2.2, which would be base offense level 18. He agrees with footnote 2 of the PSR, where it lays out a contingent guideline analysis should the court decline to apply the cross-reference. Mr. Hargraves agrees with footnote 2's application of a 5-level increase under USSG §2G2.2(b)(5) (pattern of activity), a 2-level increase pursuant to USSG §2G2.2(b)(6) (use of a computer), a 5-level increase under §2G2.2(b)(7)(D) because the offense involved 600 or more images; and the 2-level increase under §3C1.1 for obstruction of justice.

6. The contingent guideline analysis (which the PSR does not recommend) results in an adjusted offense level of 32. PSR at 8, fn. 2.

7. Application of the cross-reference, by contrast, Mr. Hargraves results in adjusted offense level 38, based on base offense level 32, a 2-level increase under USSG 2G2.1(b)(2)(A) (sexual contact), a 2-level

increase under 2G2.1(b)(6)(A) for misrepresentation of identity on interactive computer service, and the 2-level enhancement under 3C1.1 (obstruction of justice). PSIR at 8, ¶21-31.

8. Mr. Hargraves objects to the application of the cross-reference to §2G2.2(c)(1). The impact of this cross-reference on the total offense level and, ultimately, on the guideline sentencing range (GSR) is as follows:
   a. Without the cross-reference, total offense level 29, CHC I, GSR 87-108 months.
   b. With the cross-reference, total offense level 35, CHC I, GSR 168-210 months.
9. Mr. Hargraves objects to the cross-reference because he does not recall ever soliciting CSAI from MV3 and does not believe he did. Mr. Hargraves's Plea Agreement expressly contemplates that he may raise this objection. Doc. #21, page 5, at fn. 3. It also contains Mr. Hargraves's concession that the government may use "any videotaped interviews in lieu of live testimony in support of the application of the cross reference...." *Id.* at 9.
10. In the videotaped interview of MV3 which the government has submitted as a sealed exhibit, MV3 said several times that Hargraves did solicit pictures or videos. But at the same time, MV3 makes statements that cast doubt as to whether Hargraves solicited her to send sexual pictures/videos, as opposed to it being something that simply happened because of the nature of the relationship. Thus, MV3 responds to a question at timestamp 10:43:17:

> Interviewer: Okay. Um, and I know you said like you weren't super comfortable sending photos of your body, but he would say, 'I'm your boyfriend, you should.' Um, tell me like what specifically he would ask for.
>
> MV3: Um, well, he didn't really ask for anything specifically. And like a lot of the times, it was very it was mutual. I'm not going to lie, it was very mutual. He But like it really wasn't at the same time because I didn't get anything in return, but yeah. So, kind of.
>
> Interviewer: Okay. I know you said he would like sometimes ask for things, like what would he say?
>
> MV3: Um, just like he would kind of just straight up ask like, 'Can I see something?' Like, 'Can I like,' yeah.
>
> Interviewer: Okay, 'Can I see something?' Um, were there other things or words that he used?
>
> MV3: Um, not that I can think of off the top of my head.

11. While isolated, equivocal remarks in MV3's interview are cited by the PSR and government to argue for application of the cross-reference, the objective evidence found in the spreadsheet of Mr. Hargraves's electronic communications in discovery does not support application of the cross-reference. The spreadsheet, which is 40,277 rows long, contains direct messages exchanged by Hargraves and MV3 (along with other Snapchat users) between December 1, 2023, and April 1, 2025. According to the PSR, Hargraves and MV3 exchanged approximately 4,450 messages over Snapchat over that timeframe. PSR at 5, ¶12.

12. Using word searches and alternative "slangy" spellings for "nude", "picture", "video", naked", and other search terms, defense counsel could not identify any instances in the direct messages where Brian

solicited CSAI from MV3. Rather, the message exchanges consist of the small talk, expressions of affection, sex talk, updates about what each person is doing ("I just ate breakfast"), exchanging TikTok links.

13. Sexually explicit discussions in the direct messages cut against the government's likely argument that Mr. Hargraves was being cautious and restricting his solicitation to voice or video calls that are not transcribed. Mr. Hargraves, whose formal education concluded with graduation from high school, worked as a property maintenance worker for a real estate company for the last two decades. As discussed further in the next section, Hargraves's evident lack of technical sophistication as to the offense conduct – using his real name, providing a photo of his own wife to MV3 and claiming it to be his mother – demonstrates a chaotic, unfiltered mental breakdown rather than a calculating predator trying to solicit CSAI from teenagers.

14. Mr. Hargraves acknowledges that the Application Note states that "the cross-reference in subsection (c)(1) is to be construed broadly and includes all instances where the offense involved employing, using, persuading, inducing, enticing, coercing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting live any visual depiction of such conduct." USSG §2G2.2, Application Note 7(A).

15. Nevertheless, Mr. Hargraves contends that where MV3 said that Hargraves "didn't ask for anything specifically," could not think of anything other than "Can I see something," and where the 4,450 messages between the two contain no evidence of solicitation, the overall record does not establish by the preponderance of the evidence that Hargraves engaged in solicitation.

16. If this Court declines to apply the cross-reference, Mr. Hargraves does not seek a variance. Rather, he requests a sentence of 87 months, the low end of the GSR.

17. If this Court applies the cross-reference, Mr. Hargraves requests a downward variance to 87 months.

II. Request for Variance.

18. Mr. Hargraves respectfully requests a downward variance for the following reasons: The cross-reference, if applied, substantially overstates the difference in culpability occasioned by the facts justifying the cross-reference, and a confluence of drug addiction and mental and physical health struggles led Mr. Hargraves from decades of living a law-abiding, sober, gainfully employed, exemplary life to a complete personal self-destruction in his mid-50s that could not have been predicted even five years ago.

19. First, assuming that this Court does overrule Mr. Hargraves's legal objection to application of the cross-reference, the 6-level increase in base offense level substantially overstates the difference in culpability occasioned by the facts justifying that cross-reference. It results in a

near-doubling of the low end of the guidelines from 87 months to 168 months.

20. For better or worse, Mr. Hargraves relationship with MV3 as revealed in direct messages was a *relationship* that lasted many months, not a simple exploitation scheme where he would trick a minor into providing CSAI and then disappear into the shadows of the internet. See PSR 12 and 13. As MV3 acknowledged, the exchange of sexually explicit messages and images was "very mutual." But more importantly, the occasional sexualized communications are vastly outnumbered by the mundane – "narrating aspects of … daily life", referring to MV3 by pet names, etc. PSR at 5-6, ¶¶12-13. The relationship, as it were, began 11 months before the October 24, 2024, exchange of CSAI, and continued for many months after, belying any suggestion that Hargraves communicated with MV3 merely for the purpose of obtaining CSAI.

21. Mr. Hargraves deserves very substantial punishment for his conduct towards MV3 and others, and indeed he has stipulated to a seven year floor in the sentencing proceeding. Absent a downward variance to mitigate the heavy impact of the cross-reference, however, he would be treated the same as a sophisticated defendant who targeted a minor solely for the purpose of obtaining CSAI in a premeditated fashion. This would be unjust, because Mr. Hargraves was an unsophisticated user of the internet / social media, isolating himself to his room in a cloud of mental illness and opiate impairment

and addiction. This Court should mitigate the excessive impact of the cross-reference by a downward variance.

22. The remaining mitigating factors cannot be examined separately because they are interrelated: Hargraves was sexually abused as a child and then sent into a tailspin by his mother's death when he was in his 20s, but nevertheless, lived as a law-abiding, productively employed, stable, family-oriented person until well into his 50s.

23. In his early life, Brian Hargraves reports, he was "molested on a regular, almost weekly, basis by his older cousin" and then occasionally molested by the older brother of one his friends, who was about 17. PSR at 12, ¶50. The impact of these experiences remained under the surface for decades, with the possible exception of his arrest at age 23 for "prostitution" which did not result in a conviction. PSR at 9, ¶¶38 and 39. That same year, Brian's mother died in a car crash, a devastating loss for him as he was extremely close to his mother but like his siblings, not close to his father.

24. Thus, Brian's sister said that "during their childhood, their father was an alcoholic and had a 'horrific' temper, which made it difficult for any of them to have a connection with him growing up." PSR at 12, ¶53.

25. The young Brian was afflicted by symptoms of anxiety and depression and began taking mental health medications as early as age 11, pausing at age 23, and then resuming at age 27.

26. Despite these setbacks in early life and mental health struggles, Brian Hargraves went on to live his life in an exemplary manner for

decades. In 1996, at age 25, he married Kristen (Mears) Hargraves. They moved out to California for a decade, where Kristen's father lived, Brian working a maintenance job for Walmart. They raised two daughters to adulthood together. They returned to New Hampshire around 2007, from which point Brian worked for one employer, Fox Fire Property Management, for almost two decades, before this arrest caused his termination. They bought a house together in Albany, New Hampshire.

27. And then a confluence of events and circumstances put Brian into a terrible decline, mentally, physically, emotionally. First, in a story well-familiar to the Court and to all of us, Brian became addicted to opiate medications after receiving a prescription for Percocet following an elbow surgery. PSR at 12-14, ¶¶54, 60. This started about 10 years ago at age 45. He began obtaining opiate medications from friends. He got a new prescription for Tramadol and suboxone for pain relief. When these prescriptions lapsed, he illegally obtained and relied on oxycodone and morphine to feed his addiction, all the way up to his arrest (about a year before arrest, he began taking suboxone by prescription as a medication-assisted treatment. PSR at 14, ¶¶58, 60.

28. Meanwhile, Hargraves's overall health deteriorated. He underwent open heart surgery, an aortic valve replacement, in 2021, just 50 years old. In 2024, he injured his shoulder in a fall, resulting in rotator cuff surgery and limited range of motion that continues to this day.

29. In a 2025 FBI interview, disclosed in discovery as Bates 468, Kristen Hargraves described a change in their relationship and decline in Hargraves:

> Brian['s] … demeanor changed a couple years ago. Brian and [Kristen] were on a weight loss journey and used to be active with walks and hikes. Now [Kristen] can't get him out of the house. They sleep in separate bedrooms because Brian snores loudly. Brian is very isolated comes home from work and goes straight to his bedroom. [Kristen] has no idea what he does in his bedroom.

30. Of course, we know, and Kristen knows now, what he was doing in his bedroom. Once a proud husband and father of two girls; a stable, loyal, longtime employee of Fox Fire Communications; a man whose only criminal history point comes from a phony inspection sticker put on his car two years before NH abandoned inspection requirements altogether; Brian since 2022 became completely isolated from the world. Never leaving his bedroom except to go to work. In physical and emotional pain. In a dense cloud of opiate medications both prescribed and illegal, engaging in deep, boundaryless online fixations with minor victims while completely detached from reality. A pathetic, sordid existence that no one could predict from how he conducted himself the first 50 years of his life.

31. At the Merrimack County House of Correction, Brian's health struggles have continued. While neither USPO Buckley nor defense counsel have been able to get medical records from MCHOC to date, counsel knows from visits that Brian has suffered from a bizarre staph infection on his hand, received surgery at Concord Hospital in the middle of the night, contracted MRSA, and overall seems to be in

a continuing decline even in the relatively short time counsel has represented him.

32. Mr. Hargraves's severe physical ailments render the 87-month sentence sought by this Memorandum significantly more punitive for him than for an average inmate.

33. To conclude: the Brian Hargraves that offended from 2022 through 2025 against multiple victims cannot be reconciled with the person he was for the first 50 years of his life. But those 50 years tell us that he has multiple strengths as a person that make him amenable to rehabilitation, and render him deserving of mercy despite his terrible, prolonged and harmful conduct against young victims.

34. Because of those 50 years, the 15-year sentence sought by the government is substantially greater than necessary to fulfill the goals of the criminal justice system, punishment, deterrence and rehabilitation. By contrast, an 87 month sentence, just over 7 years in prison for a 55-year-old man in poor health who never spent a night in jail in his life before this case, would constitute justice both for the victims and for Mr. Hargraves.

Respectfully submitted,

/Theodore M. Lothstein
Theodore M. Lothstein
N.H. Bar. No. 10562
Lothstein Guerriero, PLLC
Five Green Street
Concord, NH 03301
TEL: (603) 513-1919

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Memorandum has been forwarded by electronic mail through the ECF system this 13 September 2026 to Matthew Vicinanzo, and to counsel for the codefendants.

/*Theodore M. Lothstein*
Theodore Lothstein